UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN HAWVER,

        Plaintiff,        CASE NO. 13-11068
                                   HON. DENISE PAGE HOOD
v.

THERESA NESTORAK,
CENTER FOR FAMILY HEALTH, INC.,
UNITED STATES,

        Defendants.
                                         /

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#30]

**I.    BACKGROUND**

On December 21, 2012, Plaintiff Karen Hawver ("Hawver") filed this case as Personal Representative of the Estate of Patricia Hawver in State of Michigan Jackson County Circuit Court alleging medical negligence. (Doc # 1) Defendants Theresa Nestorak ("Nestorak") and Center for Family Health, Inc. removed the case to this Court on March 8, 2013. *Id.* At that time Nestorak and Center for Family Health were replaced with the United States because the Defendants were deemed to be employees of the U.S. Public Health Service and therefore eligible for coverage under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). (Doc # 2)

1

The Government first moved to dismiss this action on May 7, 2013. (Doc # 11) This Court dismissed the action, finding that Hawver failed to bring her suit within the two-year statutory window, that equitable tolling was unavailable, and that the Court lacked subject matter jurisdiction. (Doc # 17, Pg ID 247) The Court relied on *Rogers v. United States*, 675 F.2d 123, 124 (6th Cir. 1982), which held that there is no equitable exception to the jurisdictional prerequisites of the Federal Tort Claims Act. Hawver appealed. (Doc # 21) After this Court issued its Order, the Supreme Court resolved a circuit split and held that the FTCA's statute of limitations requirements are nonjurisdictional and subject to equitable tolling. *United States v. Wong*, 135 S. Ct. 1625, 1638 (2015). The Sixth Circuit then remanded the case back to this Court to determine whether equitable tolling saves Hawver's claims. (Doc # 24, Pg ID 261) The Court ordered limited discovery on this issue, which the parties have completed. This matter is now before the Court on the Government's Motion to Dismiss, filed on October 19, 2016. (Doc # 30) A Response and Reply were filed. (Doc # 33; Doc # 35) The Court held a hearing on February 8, 2017.

The facts are as follows. On December 31, 2009, 73-year-old Patricia Hawver visited Center for Family Health in Jackson, Michigan and was treated by nurse practitioner Nestorak. (Doc # 30-3) Patricia Hawver reported that she had fallen three days earlier and that her pain was getting worse each day. Her medical

records indicate that she suffered from several chronic health conditions at that time. *Id.* Nestorak prescribed pain medication. *Id.*

On January 10, 2010, Patricia Hawver visited the emergency room at Allegiance Health, a hospital in Jackson, Michigan because she was having back pain. (Doc # 1, Pg ID 7) She reported that she had fallen approximately two weeks earlier. *Id.* X-rays of her spine were negative for fractures, and she was diagnosed with having a contusion and prescribed pain medication. *Id.*

On January 11, 2010, Patricia Hawver went back to Center for Family Health and was again examined by Nestorak. *Id.* at 8. Patricia Hawver reported the history of her fall and indicated that the pain had moved from her left to her right side. *Id.* She reported feeling nauseous because of the pain, as well as aggravated pain due to changing positions and lifting a heavy object. (Doc # 30-4, Pg ID 313) Nestorak ordered blood tests and indicated that Patricia Hawver had hepatomegaly and may need a CT scan. (Doc # 1, Pg ID 8) Nestorak scheduled a follow-up appointment for January 18, 2010. The lab results, which became available later on January 11th, showed elevated levels of blood urea, nitrogen, creatinine, alk phosphatase, SGOT, SGPT, white blood cell count, and platelet count. *Id.* According to the Complaint, no one from Center for Family Health contacted Patricia Hawver regarding these abnormal results. *Id.*

On January 14, 2010, Patricia Hawver went back to the emergency room at Allegiance Health. *Id.* at 9. She was observed to have low blood pressure, jaundice, and mental status changes. *Id.* Allegiance Health ran tests and found several gallstones in her common bile duct, as well as a distended gallbladder with surrounding fluid. *Id.* Patricia Hawver underwent a sphincterotomy and a cholecystectomy to remove her gallbladder. *Id.* Complications arose from the surgery, and Patricia Hawver suffered an infarction. *Id.* She fell into a coma and was transferred to the intensive care unit at Allegiance Health. *Id.* On January 27, 2010, she was transferred to Care Link where she spent approximately two and a half months receiving palliative care. *Id.* She was discharged home and passed away on April 12, 2010, which Hawver alleges was due to her untreated gallstone disease and pancreatitis. *Id.* Patricia Hawver's death certificate states that she died of arrhythmia from a CVA. (Doc # 33-2)

At the time of her death, Patricia Hawver had five adult children, some of whom are disabled. (Doc # 30-5, Pg ID 317-18) Hawver (who is not disabled) is one of Patricia Hawver's children; she was 45 years old and living in Ann Arbor, Michigan at the time of her mother's death. Hawver has her own accounting business and prior to that she was the finance director of several local non-profit organizations. *Id.* at 317. Hawver was in Jackson, Michigan looking after her mother from mid-January 2010 through mid-April 2010. *Id.* at 318. She did not

4

request medical records or visit Center for Family Health during that time. (Doc # 30-6, Pg ID 347) According to an Affidavit of Hawver, she was devastated by her mother's death and incapable of dealing with her estate throughout 2010:

> I was not capable of thinking about dealing with my mother's estate during the calendar year of 2010 because of 1) having to care for her at her home with help from Hospice care; 2) my grief; 3) my having to deal with funeral arrangements; 4) my being the only sibling who was capable of dealing with the multiple family problems, especially the situation with my sister Amy and her children; and my hectic life generally.

(Doc # 30-5, Pg ID 319)

At the time of her mother's death, Hawver was in a long-term relationship with Beth Sherman ("Sherman"), her now spouse and a social worker. Sherman had professional experience requesting medical records. At her deposition, Sherman testified that Hawver never asked her to request medical records in 2010. (Doc # 30-7, Pg ID 385-88)

In 2010, Hawver and Sherman were involved in probate court proceedings through which they eventually became guardians to Hawver's sister's two children. They retained an estate planning and probate attorney, Jane Bassett ("Bassett"). In the fall of 2010, Hawver met with Bassett and expressed concern regarding the circumstances of her mother's death. (Doc # 30-5, Pg ID 319) Bassett suggested that Hawver become personal representative of her mother's estate and request her

5

medical records. *Id.* Hawver was appointed personal representative of the estate in January 2011. *Id.*

Bassett referred Hawver to Ferris & Slater, P.C., Hawver's attorneys in the instant matter, and Hawver met with Heidi Slater-Ferris ("Slater-Ferris") on April 19, 2011. (Doc # 30-5, Pg ID 319) She was told to bring medical records, but Hawver had only requested records from Care Link at the time of the meeting with Slater-Ferris. (Doc # 30-6, Pg ID 359-62) Slater-Ferris told Hawver that she would need to obtain all of the medical records. (Doc # 30-5, Pg ID 320) Hawver asserts that following this meeting she was "emotionally incapable of going to Allegiance or Center for Family Health to gather the records," and she asked Sherman to help her. *Id.*

Sherman testified at her deposition that she made two or three phone calls to Allegiance Health at some point between April 19, 2011 and the end of 2011 to attempt to get the medical records. (Doc # 30-7, Pg ID 394-95) Sherman's brother-in-law had recently died in March 2011, which caused additional "family disruption." *Id.* at 396. Sherman also ran into "complexity" obtaining the Allegiance Health records because of an outstanding medical bill that would need to be paid before records could be released. *Id.* at 398. Sherman never requested records from Center for Family Health because she assumed it was a part of Allegiance Health, even though they were in different locations. *Id.* at 394-95.

6

Hawver and Sherman do not know why they assumed Allegiance Health and Center for Family Health were part of the same organization, and they concede that they did nothing to investigate the relationship between the two. (Doc # 30-6, Pg ID 334-38; Doc # 30-7, Pg ID 394-95) Sherman never requested records via written authorization from either Allegiance Health or Center for Family Health. (Doc # 30-7, Pg ID 397)

In the spring of 2012, Bassett called Hawver and Sherman and asked if they had done anything further regarding Patricia Hawver's medical care. (Doc # 30-7, Pg ID 407) Sherman explained she was "stuck" and had tried a few times. Bassett then subpoenaed the medical records from Allegiance Health and Center for Family Health on May 7, 2012, but she failed to include the required written authorization. Hawver then signed the authorization on May 12, 2012; Bassett submitted the paperwork again; and Center for Family Health provided the medical records on May 25, 2012. *Id.*; Doc # 30-6, Pg ID 377-78. Hawver also obtained most of the records from Allegiance Health in May 2012. (Doc # 30-5, Pg ID 320) She forwarded all of the medical records to Slater-Ferris in May 2012. *Id.*

On July 13, 2012, Hawver sent Nestorak and Center for Family Health a Notice of Intent to File Claim under M.C.L. § 600.2912(b). Hawver did not sign a retainer with Slater-Ferris until August 31, 2012. *Id.* On October 4, 2012, the Department of Health and Human Services sent a letter to Hawver's attorney

stating that the FTCA was the exclusive remedy and advising that Hawver was required to file an administrative claim with the agency. Hawver submitted an administrative claim on November 5, 2012, which was denied because the claim was received after the two-year statute of limitations period expired. (Doc # 30-12) On December 21, 2012, Hawver filed suit in Jackson Circuit Court. The matter was removed to this Court on March 8, 2013.

## II. ANALYSIS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As the Supreme

Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level… ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**B. FTCA's Statute of Limitations and Accrual of Hawver's Claim**

Hawver argues in her Response that her Complaint was timely filed because she filed her administrative tort claim within two years of the date the claim accrued, which she now claims was May 2012 when she finally got the medical records from Center for Family Health and Allegiance Health. The Government

replies that, under the "law of the case" doctrine, the issue of when Hawver's claim accrued was already decided with Hawver's concurrence, and there is nothing to justify revisiting this issue now.

At oral argument, Hawver argued that, at the time of the Government's first motion to dismiss, there had been no discovery on the accrual issue. Hawver argues that, after conducting depositions, there is now new evidence showing that the claim accrued later because Hawver did not know the cause of the death of Patricia Hawver until after she reviewed the medical records from Center for Family Health and Allegiance Health in May 2012. The Government argues, and the Court agrees, that there is no information now that is any different than the information that was available to Hawver when she responded to the Government's first motion to dismiss.

"Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). This doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues," and it "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal quotations and

citations omitted). "A complimentary theory, the mandate rule, requires lower courts to adhere to the commands of a superior court" and to "proceed in accordance with the mandate and the law of the case as established on appeal." *Moored*, 38 F.3d at 1421 (internal quotations and citations omitted).

This Court found in its prior Order that Hawver's claim accrued "on January 11, 2010, at the earliest (the date Plaintiff alleges Defendant first erred in treatment/diagnoses) and April 12, 2010, [at] the latest (the date Ms. Hawver passed away)." (Doc # 17, Pg ID 247) The Court specifically concluded that Hawver failed to comply with the FTCA by failing to file her claim within the two-year statute of limitations. *Id.* Hawver did not raise the argument of a later claim accrual date subsequent to April 12, 2010 on appeal. In its opinion, the Sixth Circuit also stated that "[b]y the time Hawver filed this lawsuit, the two-year statute of limitations applicable to claims under the Act had run." (Doc # 24, Pg ID 261) The Sixth Circuit remanded the case specifically to give the Court "an opportunity to determine whether equitable tolling saves Hawver's claim." *Id.* The Court declines to revisit the statute of limitations and claim accrual issue that was already decided at an earlier stage of this litigation, and the Court notes that there is no new evidence to justify revisiting this issue.

**C. Equitable Tolling**

Turning to the central question, whether equitable tolling saves Hawver's claim, the Government argues that Hawver has not carried her burden of showing that she is entitled to equitable tolling. The Government argues that Hawver knew or was unreasonable in remaining ignorant of the FTCA's requirements, noting that she did nothing to investigate potential defendants. The Government further argues that Hawver was not diligent in pursuing her rights because she did not become personal representative of the estate until January 2011 and did not retain counsel until August 2012, after the FTCA's statute of limitations had already expired. The Government also notes that, from January 2010 through mid-April 2011, Hawver did nothing to even request medical records from the Center for Family Health and Allegiance Health. Her first request for those records was after the FTCA's statute of limitations had already expired. The Government further argues that it would be prejudiced if it had to defend against a claim based on medical care provided over seven years ago, by a now retired employee.

Hawver responds that her grief and difficult family issues presented extraordinary circumstances beyond her control that prevented opening an estate, investigating the circumstances of her mother's death, and timely filing. Hawver argues that a reasonable person in this case would not have suspected that her mother's death was caused by medical negligence until obtaining the medical records, which did not happen until May 2012. Hawver further argues that she had

no reason to think that Center for Family Health and its employees were protected under the FTCA, and that she relied on her knowledge of Michigan law allowing a plaintiff to bring suit within two years of becoming personal representative.

"[T]he doctrine of equitable tolling allows federal courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005). In the Sixth Circuit, courts consider the following factors when analyzing equitable tolling claims: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not comprehensive or always relevant, and courts must consider each equitable tolling claim on a case-by-case basis. *Keenan*, 400 F.3d at 421. A lack of diligence by a claimant, however, acts to defeat her claim for equitable tolling. *Chomic v. United States*, 377 F.3d 607, 616 (6th Cir. 2004).

The Supreme Court recently reaffirmed that a claimant must establish the following two distinct elements in order to establish an equitable tolling claim: (1) that she has been pursuing her rights diligently, and (2) that some extraordinary

circumstance beyond her control stood in her way and prevented timely filing. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755-56 (2016).

The doctrine of equitable tolling is to be used sparingly by federal courts. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). It does not extend to "garden variety claim[s] of excusable neglect" that causes an attorney or party to miss a deadline. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). This applies in the context of an FTCA claim, given that the statute provides a limited waiver of the United States' sovereign immunity. *Bazzo v. United States*, 494 Fed. App'x 545, 547 (6th Cir. 2012). "The party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson*, 624 F.3d at 784.

Regarding Hawver's knowledge of the FTCA's requirements (her actual and constructive knowledge, as well her reasonableness in remaining ignorant of the FTCA's requirements), the Court finds that Hawver was not reasonable in remaining ignorant of the FTCA's requirements. From January 2010 through mid-April 2011, Hawver did nothing. She did not even request medical records from Center for Family Health and Allegiance Health. Although she expressed concern regarding the circumstances of her mother's death as early as fall of 2010, Hawver's first request for the Allegiance Health records (via Sherman) was not until sometime between April 19, 2011 and the end of 2011. Hawver's first request for the Center for Family Health records (via Bassett) was not until May

2012, after the FTCA's statute of limitations had already expired. Hawver and Sherman concede that they did nothing to investigate the relationship between Center for Family Health and Allegiance Health. (Doc # 30-6, Pg ID 334-38; Doc # 30-7, Pg ID 394-95)

Hawver does not explain how Center for Family Health's federally-qualified status would have eluded a reasonably diligent party, and she does not contend that anyone attempted to mislead her about Center for Family Health's participation in federal programs. As the Seventh Circuit has noted, Public Health Service operates a publicly available website that identifies all health centers that receive federal funds (and lists Center for Family Health) and can only be sued under the FTCA. *See Blanche v. United States*, 811 F.3d 953, 963 (7th Cir. 2016) (noting that members of the medical malpractice bar should know enough to consult the website when *approached* by a *prospective* client). The Government notes that Hawver could have called a toll-free hotline (866-FTCA-HELP) or simply called Center for Family Health to inquire about its malpractice insurance carrier, which Hawver never attempted to do. Throughout the two-year statute of limitations period in this case, Center for Family Health maintained a publicly available website, which also stated that it was a "federally qualified health center (FQHC)" since 2000. (Doc # 30-13, Pg ID 432-33) Hawver concedes that she never visited the website or attempted to call or research Center for Family Health. The Court

concludes that the record reveals no obstacle to discovering Center for Family Health's federally-qualified status.

Regarding Hawver's diligence in pursuing her rights, the above discussion is pertinent because diligence requires reasonable efforts on the part of a plaintiff to learn the legal identity and employment status of potential defendants and to obtain relevant medical records. Hawver did not seek to become personal representative of her mother's estate until January 2011, a full year after Nestorak's alleged negligent medical care and over eight months after her mother's death. Although she met with a medical malpractice attorney in April 2011, she failed to retain the firm until August 31, 2012 for unknown reasons, months after the FTCA's statute of limitations had already expired. Following the April 2011 meeting with Slater-Ferris, besides asking Sherman for help obtaining medical records (which resulted in Sherman making two or three phone calls to Allegiance Health in 2011), Hawver did nothing else to pursue her potential lawsuit until the spring of 2012, about a year and a half after Bassett initially suggested that Hawver obtain the relevant medical records. In support of her argument that she diligently pursued her rights, Hawver notes that she filed suit within Michigan's statute of limitations.[1] As courts have noted, however, if that were enough for equitable

---

[1] Under Michigan law, the personal representative of an estate may commence an action at any time within two years from the date of the appointment of the personal representative, but an action shall not be commenced later than five years from the date the claim accrued. *See* M.C.L. § 600.5852.

16

tolling, then the FTCA's statute of limitations "would have no bite." *See Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (noting that Congress expressly rejected this proposition in the Westfall Act, "which allows timely filed state-court tort claims removed to federal court to proceed only if the state-court action was filed within the FTCA's two-year statute of limitations"); *Chomic*, 377 F.3d at 615. Under these facts, the Court finds that Hawver was not diligent in pursuing her rights.

Regarding prejudice to the Government, the Court finds that Hawver has not shown that the Government would not be prejudiced by having to defend against a claim based on medical care provided by a now retired employee over seven years ago.

Hawver relies primarily on three cases from other circuits, which are all distinguishable from this case. The first is *Santos ex rel. Beato v. United States*, 559 F.3d 189 (3d Cir. 2009). The Third Circuit concluded that equitable tolling was appropriate in *Santos* because the plaintiff had retained counsel within months of her child's injury; the name of the medical provider, "York Health Corporation," sounded like a private enterprise; the plaintiff's counsel diligently researched the possible defendants (including reviewing medical records, as well as corresponding with, visiting, and performing a public records search on York Health); and, at the time the case was decided, there was no publicly available

information indicating York Health's federal status. *Id.* at 198-203. The Third Circuit in *Santos* was also particularly concerned with a statute of limitations that would "ensnare children," the plaintiffs who would likely be invoking statutory tolling in Pennsylvania. *Id.* at 204 ("[W]e have no doubt at all that if Santos had been 18 years old . . . when her cause of action accrued she would have brought her claim in the state court within two years of that date so that the Westfall Act would have saved it.").

In contrast, Hawver waited two years and four months after her mother's death to retain counsel; the name Center for Family Health sounds more like a government entity than a private enterprise; there is no indication that anyone diligently researched Center for Family Health's status at any point; and there was publicly available information indicating Center for Family Health's federal status as discussed above.

Hawver next relies on *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144 (2d Cir. 2013). In *Phillips*, the Second Circuit expressly offered "no opinion concerning whether the plaintiff's lawyers were diligent, or whether equitable tolling should ultimately be granted." *Id.* at 155. Rather, the court remanded the case for the district court to consider the totality of the circumstances in determining whether the lawyers lacked diligence. *Id.* The court did note that the plaintiff had timely retained counsel, and that the plaintiff's lawyers had visited the

18

provider's website, looked at its medical records, and performed a corporate search before the FTCA's statute of limitations period expired. *Id.*

In contrast, Hawver did not timely retain counsel, and no one visited Center for Family Health's website, looked at its medical records, or performed a corporate search before the FTCA's statute of limitations period expired.

Hawver also relies on *Valdez ex rel. Donely v. United States*, 518 F.3d 173 (2d Cir. 2008). In *Valdez*, the Second Circuit remanded the case for the district court to develop the record sufficiently to determine the accrual date of the plaintiffs' malpractice claim. *Id.* at 182. The court did not resolve the issue of whether the district court correctly applied the doctrine of equitable tolling. *Id.*

While the Court recognizes that Hawver and her family were going through a difficult period and empathizes, the Court finds that, unfortunately, at no time during the FTCA's two-year statute of limitations period did Hawver make any effort to identify the employment status of Defendants. Hawver did not obtain and review medical records from Center for Family Health until May 2012, and she did not retain counsel until August 2012 – after the FTCA's statute of limitations had already expired. The Court concludes that Hawver's claim is an instance of failure to discover the identity of a defendant amounting only to excusable neglect, and not enough for the Court to apply equitable tolling in this case. Defendant's Motion to Dismiss is granted.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant United States's Motion for Dismiss (Doc # 30) is GRANTED.

IT IS FURTHER ORDERED that this action is dismissed.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: May 19, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 19, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager